## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FILOMENA RANIERI WARD, | : | |
| MICHELLE McCANDLESS, | : | |
| GERMAN PARODI, | : | |
| DAVID WITTIE, | : | |
| RANDY ALEXANDER, | : | |
| CAROL MARFISI, | : | |
| individually and on behalf of similarly | : | |
| situated persons, DISABLED IN | : | |
| ACTION OF PENNSYLVANIA, a | : | |
| nonprofit corporation, | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | CIVIL ACTION |
| | : | No.: 11-4692 |
| | : | |
| PHILADELPHIA PARKING | : | |
| AUTHORITY, and | : | |
| VINCE FENERTY, | : | |
| in his official capacity | : | |
| as the Executive Director of the | : | |
| Philadelphia Parking Authority, | : | |
| and TAXICAB AND LIMOUSINE | : | |
| DIVISION of the PHILADELPHIA | : | |
| PARKING AUTHORITY, and | : | |
| JIM NEY, in his official capacity | : | |
| as the Director of the | : | |
| Taxicab and Limousine Division of the | : | |
| Philadelphia Parking Authority, | : | |
| Defendants. | | |

## M E M O R A N D U M

SITARSKI, M.J.                                          January 20, 2015

This matter is before the Court on Plaintiffs' Motion for an Award of Attorney's Fees and

Costs under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101-12213,

and the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*  Defendants have filed a Response, (ECF No.

92), and Plaintiffs have filed a Reply, (ECF No. 93).  For the reasons that follow, this Court will

grant in part and deny in part Plaintiffs' motion for attorney's fees and costs.

## I.        BACKGROUND

Plaintiffs Filomena Ward, Michelle McCandless, German Parodi, David Wittie, Randy Alexander, Carol Marfisi, and Disabled in Action of Pennsylvania, (collectively "Plaintiffs"), filed suit against the Philadelphia Parking Authority ("PPA"), the Taxicab and Limousine Division of the PPA, and Vince Fenerty and Jim Ney, in their respective official capacities as directors of those entities (collectively "Defendants"), alleging violations of the ADA, the Rehabilitation Act, and various federal regulations implementing those statutes, because Defendants failed to ensure the taxicab transportation system in Philadelphia was accessible to persons requiring or using wheelchairs.  (Compl., ECF No. 1).  Plaintiffs sought declaratory and injunctive relief, as well as attorney's fees and costs.  (*Id*. at 25).

On June 13, 2014, the parties entered into a court-sanctioned and judicially enforceable Consent Decree.  (*See* Consent Decree, ECF No. 87).  The issue of whether Plaintiffs would have been able to obtain relief under the ADA or the Rehabilitation Act had not been judicially adjudicated and the Consent Decree did not resolve this question.  (*See Id*. at 2) ("The Authority disputes the legal apply either the ADA or Section 504 as identified in the Plaintiff's complaint to its regulation of the Philadelphia taxicab and limousine industry.").  Rather, the Consent Decree resolved this case by keying off on Act 119,  legislation enacted on July 5, 2012.  *See* 53 Pa. Cons. Stat. Ann. § 5711.  Under Act 119, the General Assembly immediately increased the statutory ceiling on the number of Philadelphia taxicab medallions from 1600 to 1615.  *Id.* at § (c)(2)(I).  Each of those additional fifteen medallions was required to go to wheelchair accessible

taxicabs.  *Id.*  Additionally, Act 119 gave the PPA discretionary authority to issue fifteen additional taxicab medallions on June 1 of every year — beginning on June 1, 2013 — until it reached 1750 medallions overall.  *Id.* at § (c)(2)(ii).  Under the terms of the Act, these additional yearly medallions were not <u>required</u> to go to WAVs.  In contrast, under the Consent Decree, if the PPA exercised its discretion and opted to release additional medallions on June 1 of any year, those medallions were <u>required</u> to go wheelchair accessible taxicabs.  (Consent Decree ¶ 3, ECF No. 87).  Additionally, the Consent Decree contemplated that the PPA might obtain statutory authority other than Act 119 to issue medallions in the future.  Should the PPA obtain the authority to grant additional medallions with the discretion to set vehicle specifications, the consent decree obligated the PPA to issue up to 200 additional medallions to wheelchair accessible taxicabs.  (*Id.*).

Importantly, the PPA could not sell any WAV medallions until the Pennsylvania legislature promulgated the enabling regulations.  The Pennsylvania legislature did eventually pass regulations 126-5 and 126-6, which relate to the use of WAV taxicabs in Philadelphia and medallion sale procedures.  (*Id.* at 2).  Under the Consent Decree, Plaintiffs were obligated to advocate for the regulations in writing and at public meetings.  (*Id.* ¶ 3 ).  Additionally, the Consent Decree required the parties to work cooperatively in furtherance of providing better information to the public regarding the availability of WAV taxicabs.  (*Id.* ¶¶ 4-7).  The Court retained continuing jurisdiction to enforce the Consent Decree.  (*Id.* ¶ 10).

The Consent Decree acknowledged that the parties disagreed as to whether Plaintiffs were entitled to attorney's fees, and left this question open.  (*Id.* ¶ 10).  On August 18, 2014, Plaintiffs filed a Motion for Fees and Costs seeking $129,686.34 in fees as well as $350.00 in

costs.  (ECF No. 91).

By order dated October 6, 2014, Judge C. Darnell Jones II referred the matter to me for disposition.  (ECF No. 94).  The parties presented oral arguments on October 29, 2014, (*see* ECF No. 96), and the matter is ripe for disposition.

## II.   LEGAL STANDARD

Pursuant to the "American Rule," litigants are generally responsible for their own attorney's fees.  *Truesdell v. Phila. Hous. Auth.*, 290 F.3d 159, 163 (3d Cir. 2002) (*citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)).  However, Congress has provided an exception to the American Rule in actions under the ADA and the Rehabilitation Act to allow a "prevailing party" under either statute to recover attorney's fees.  *See* 42 U.S.C. § 12205; 29 U.S.C. § 794a(b).  In relevant part, the ADA provides: "[i]n any action . . . commenced pursuant to this chapter, the court . . .  in its discretion, may allow the prevailing party . . . a reasonable attorney's fee."  42 U.S.C. § 12205.  The Rehabilitation Act contains a substantively identical provision.  *See* 29 U.S.C. § 794a(b).  The standard for awarding attorney's fees under the ADA or Rehabilitation act is the same as a claim under the Civil Rights Act of 1964, 42 U.S.C. § 1988.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 n. 7 (1983) (explaining that the standards for interpreting the fee-shifting provision of 42 U.S.C. § 1988 are "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'").

The threshold issue is to determine whether the plaintiff is a prevailing party.  *See Hensley*, 461 U.S. at 433.   A "'prevailing party' is one who has been awarded some relief by the

court," either by way of an enforceable judgment against the defendant, or comparable releif through a settlement or consent decree. *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001). A prevailing plaintiff under a civil rights statutes should "ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Henlsey*, 461 U.S. at 429 (internal quotation omitted).

Once the Court determines the plaintiff has prevailed and no special circumstances bar recovery, the calculation of the appropriate amount of attorney's fees begins with the lodestar, which is the "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The fee petitioner has the burden to prove that its request is reasonable, which it typically meets by "submit[ting] evidence supporting the hours worked and the rates claimed." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (internal quotation omitted). The resulting lodestar is presumed to represent a reasonable fee. *Id.* (*citing Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

## III.    DISCUSSION

Defendants contest Plaintiffs' motion for fees and costs on the following grounds: (A) Plaintiffs are not entitled to invoke the fee shifting provisions of the ADA or the Rehabilitation Act because the Court never determined that the Defendants violated those acts and because Plaintiffs did not "prevail" by obtaining the consent decree; (B) special circumstances exist that render the award of fees and costs unjust; and (C) even if fees and costs are available under the statutes, a reduction of the lodestar is appropriate due to Plaintiffs' charging excessive fees and for unnecessary hours.

For the reasons set forth below, this Court determines that Plaintiffs are entitled to invoke the fee-shifting provisions of either the ADA or the Rehabilitation Act, despite not having litigated the merits of their claims under either statute, and are entitled to prevailing party status under the statutory fee-shifting provisions.  Though special circumstances do not warrant a denial of fees to Plaintiffs, the Court will adjust the lodestar downward in light of certain objections raised by Defendants to Plaintiffs' time charged.

### A.      Plaintiffs can Invoke Fee-Shifting Provisions and are a Prevailing Party

As a threshold matter, Plaintiffs may invoke the statutory fee shifting provisions of the ADA and Rehabilitation Act even though Defendants have not admitted to any violations of those acts and the Court has not found Defendants liable.  *See Maher v. Gagne*, 448 U.S. 122, 129 (1980) ("[N]othing . . . conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated."); *Buckhannon*, 532 U.S. at 604 (defendant need not admit liability or be found liable for plaintiff to be found to "prevail" for purposes of fee shifting provisions).  Defendants argue the contrary, relying on *Alyeska Pipeline* and *Key Tronic*, (*see* Defs.' Resp. 3, ECF No. 92), but these cases stand only for the proposition that there must be explicit Congressional statutory authority before fees can be shifted.  *See Alyeska Pipeline Serv. Co.*, 421 U.S. at 262 ("[T]he circumstances under which attorneys' fees are to be awarded and the range of discretion of the courts in making those awards are matters for Congress to determine."); *Key Tronic Corp. v. United States*, 511 U.S. 809, 814 (1994) ("[A]ttorney's fees generally are not a recoverable cost of litigation absent explicit congressional authorization.") (internal quotation omitted).  That such statutory authority exists under the ADA or the Rehabilitation Act is not in dispute, as Congress has authorized the

6

award of reasonable attorney's fees and costs to a prevailing party in an action "*commenced*

under" the ADA, 42 U.S.C.A. § 12205 (emphasis added), or in any action or proceeding to

"enforce or charge a violation" of the Rehabilitation Act, 29 U.S.C.A. § 794a.  Accordingly, the

relevant consideration is not whether Plaintiffs actually succeeded on the merits, nor the

likelihood that they could have succeeded had the case proceeded rather than terminated by way

of the consent decree.[1]  Rather, whether Plaintiffs may recover attorney's fees and costs under

these statutes turns on whether they have prevailed.

     The Supreme Court has given a "generous formulation" to the term "prevailing party."

*Hensley*, 461 U.S. at 433.  "Plaintiffs may be considered 'prevailing parties' for attorney's fees

purposes if they succeed on any significant issue in litigation which achieves some of the benefit

the parties sought in bringing suit." *Id.* (internal quotation omitted).  The touchstone of this

inquiry is whether the plaintiff has obtained a "material alteration of the legal relationship of the

parties in a manner which Congress sought to promote in the fee statute." *Tex. State Teachers

Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782, 792-93 (1989).  At a minimum, this requires

---

[1] Defendants suggest that Plaintiffs may not avail themselves of the fee shifting
provisions of the ADA or the Rehabilitation Act because, had the litigation proceeded, Plaintiffs
could not have prevailed on the merits.  In support of this argument, Defendants rely on the
decision of the Second Circuit Court of Appeals in *Noel v. N.Y.C. Taxi & Limousine Comm'n*, in
which the Court held that failure of a taxi commission such as the PPA to provide wheelchair
access to taxis does not constitute a violation of Title II of the ADA.  *See* 687 F. 3d 63, 74 (2d
Cir. 2012).  Plaintiffs challenge the substance of this argument, contending that they would have
succeeded where the *Noel* plaintiffs failed because they had a different argument vis-à-vis
methods of administration.  (Pl.'s Reply at 4).  Plaintiffs acknowledged at oral argument that
*Noel* hurt their bargaining position, but maintained that Defendants would have moved for
summary judgment if Plaintiffs' case had no merit post-*Noel*.  (Hr'g Tr. 25: 1-26:11).  The Court
expresses no opinion as to these positions.  It suffices to note that Plaintiffs are not required by
statute or case law to show that they could have succeeded on the merits on their ADA or the
Rehabilitation Act claims before they may recover fees under those statutes' fee shifting
provisions.

"resolution of the dispute which changes the legal relationship between itself and the defendant."

*Id.* at 792.  This change must be "judicially sanctioned."  *See Buckhannon*, 532 U.S. at 603

(holding that a litigant whose Fair Housing Amendments Act and ADA claims were mooted by

intervening state legislation was not a "prevailing party" for purposes of those statutes' fee-

shifting provisions).  However, there is no requirement a party obtain an enforceable judgment to

succeed; rather, courts have repeatedly noted that relief obtained through a consent decree or

settlement is sufficient.  *See Farrar v. Hobby*, 506 U.S. 103, 111 (1992); *Singer Mgmt.*

*Consultants, Inc. v. Milgram,* 650 F.3d 223, 228 (3d Cir. 2011) (*citing Buckhannon*, 532 U.S. at

603-04).

Second, a prevailing plaintiff must "achieve at least some of the benefit it sought in

bringing the suit."  *Hensley*, 461 U.S. at 433; *see also P.N. v. Clementon Bd. of Educ.*, 442 F.3d

848, 856 (3d Cir. 2006).  This has been interpreted to require the plaintiff to obtain an action that

"affect[s] the behavior of the defendant toward the plaintiff."  *Farrar v. Hobby*, 506 U.S. 103,

117 (1992) (internal citations omitted).  While a technical or de minimis victory does not satisfy

this requirement, the Supreme Court has held that party who obtained only $1 in nominal

damages met this standard because he obtained relief that modified the defendant's behavior for

his benefit.  *Farrar*, 506 U.S. at 111–12.  The degree of a prevailing plaintiff's victory is relevant

to the reasonableness of the overall award, "not to the availability of a fee award vel non." *Texas*

*State Teachers Ass'n*, 489 U.S. at 793.

In view of the foregoing, it is clear that the Consent Decree in this case renders Plaintiff

the prevailing party under the ADA or Rehabilitation Act.  The Consent Decree plainly satisfies

the judicial imprimatur requirement, because it was approved and entered by the Court, contains

8

mandatory and binding language, and provides for continuing jurisdiction.  (*See* Consent Order
5, ¶ 17, ECF No. 87).  This degree of judicial involvement differentiates the Consent Decree
from a private settlement, which may not be sufficient to give rise to prevailing party status.  *See*
*Buckhannon*, 532 U.S. at 604 n. 7.  To be sure, Act 119 was the legislative basis underlying the
resolution of this dispute.  However, Act 119 standing on its own did not result in Plaintiffs' suit
being mooted due to Defendants voluntary change in behavior, as was the case in *Buckhannon*;
nor did Act 119 prompt Plaintiffs to withdraw their case.  Rather, after extensive negotiations,
the parties terminated the lawsuit two years after Act 119 was promulgated.  As Plaintiffs point
out, it is because of the Consent Decree—not Act 119 or any voluntary actions on the part of
Defendants—that the "Court has the authority and responsibility to ensure that the agreed to and
ordered provisions . . . will be enforced."  (Pls.' Reply at 8).

         In addition to being judicially enforceable, the Consent Decree works a material change
in the parties legal relationship because it allowed Plaintiffs to "achieve at least some of the
benefit in sought in bringing the suit."  *Hensley*, 461 U.S. at 433.  It is not the case, as
Defendants contend, that all the Consent Decree requires is the PPA's compliance with Act 119.
(Defs.' Resp. at 8).  Rather, under the Decree, Plaintiffs obtained from Defendants more than Act
119 alone would have required.  Under Act 119, Defendants were required to issue fifteen
additional medallions to WAVs.  Any additional medallions offered on June 1 of each year (in
2013 or after) were not required by Act 119 to go to wheelchair accessible taxicabs.  Under the
Consent Decree, however, any additional medallions offered in the annual June 1 release <u>must</u>
go to WAVs.  Thus, the Decree obtained for Plaintiffs an enforceable obligation on the part of
the PPA to issue medallions to wheelchair accessible taxicabs exclusively, should it issue any

additional medallions at all under Act 119.[2]  This establishes a material alteration in the legal

status of the parties as set forth in *Farrar.  See Lefemine v. Wideman*, 133 S.Ct. 9, 10 (2012) (per

curiam) (reversing and remanding where plaintiff who secured permanent injunction was found

not to have prevailed because the injunction "ordered the defendant officials to change their

behavior in a way that directly benefitted the plaintiff.").

Defendants' argument that Plaintiffs did not prevail because they achieved little of what

they initially sought in bringing this lawsuit is unavailing.  As outlined above, to prevail, a party

must obtain a material alteration in the legal relationship with its adversary.  But, "[w]hen . . .  a

material alteration in the legal relationship of the parties has occurred, 'the degree of the

plaintiff's overall success goes to the reasonableness of the award under *Hensley*, not to the

availability of a fee award *vel non*.'"  *Truesdell*, 290 F.3d at 166 (*quoting Texas State Teachers

Ass'n*, 489 U.S. at 793).  Thus, while district courts have discretion to adjust the *amount* of the

award downward in light of the results obtained,[3] *see Hensley*, 461 U.S. at 434-37, they may not

---

[2]  Defendants suggest that this imposed no obligation upon them, since they retain the ultimate discretion not to release any medallions under Act 119 in June of every year.  This argument is undercut by the fact that in August, 2014, the PPA offered for sale 45 medallions pursuant to Act 119: the fifteen medallions that would have gone to WAVs under the terms of Act 119, plus thirty additional medallions from the deferred June 1, 2013 and June 1, 2014 issuances.  *See* Authorization of Wheelchair Accessible Taxicab Medallions, Doc No. 14-003, 44 Pa. B. 5550, *available at* http://www.pabulletin.com/secure/data/vol44/44-33/1766.html.  Each of those thirty medallions were earmarked for WAV, as the Consent Decree (but not Act 119) requires.  Had the PPA authorized the sale of those thirty medallions to non-WAVs, it would be subject to the jurisdiction of the Court pursuant thereto the Consent Decree, for possible breach thereof.

[3]  Importantly, Defendants have not argued for an overall reduction in the lodestar due to Plaintiffs' limited degree of success, nor may the Court *sua sponte* authorize a reduction on a basis that Defendants did not request.  *See Rode*, 892 F.2d at 1188-89 ("The reasoning applicable to prevent pre-lodestar *sua sponte* action applies equally to post-lodestar action.  The fee applicant retains the need to be notified that it has to defend its fee request and the adversarial

hold that a party has not prevailed on the same basis.  To reach such a conclusion, the court would have to find that the plaintiff's degree of victory was so inconsequential that it was technical or de minimis.  Plaintiffs degree of success here was not technical or de minimis.  They may not have achieved a full conversion of Philadelphia's taxicabs to WAVs, but through the Consent Decree they have obtained at least some of what they sought in bringing this lawsuit. The Court may not deny Plaintiffs prevailing party status on the basis that they did not achieve all, or even substantially all, of what they sought in filing this lawsuit.

Moreover, Defendants suggest that Plaintiffs did not prevail because they only agreed to enter into the Consent Decree to give "Plaintiffs cover to terminate the case with the appearance of a positive result." (Defs.' Resp. at 8).   The Court finds no authority suggesting that the parties' motives in settling a case bear on whether a party has prevailed.  Whatever the motives of the parties, they opted to terminate this litigation in a manner that afforded Plaintiffs some degree of court-ordered relief on a matter in this suit.  Under Supreme Court and Third Circuit precedent, that creates a material alteration in their legal status giving rise to prevailing party status.

Lastly, Defendants warn that conferring prevailing party status on Plaintiffs will set a "dangerous precedent" because it will allow parties who "did not achieve any relief whatsoever under [a fee-shifting] statute to recover fees and costs."  (Defs.' Resp. at 9).  The Court notes

---

nature of the process is as strong post-lodestar as pre-lodestar.").  Though the facts of *Rode* are inapposite—the Third Circuit held that the district court erred in *denying* an unopposed post-lodestar request *sua sponte*—the underlying logic bears.  *See id.* at 1189.  Here, because Defendants have not briefed or argued for an overall reduction to the lodestar due to Plaintiffs limited success, Plaintiffs were not on notice of the need to defend their fee petition on that basis.

Defendants' concerns, but must reiterate that Plaintiffs have obtained relief in the litigation they commenced under the ADA and Rehabilitation Act.  Plaintiffs are eligible to recover fees and costs as a prevailing party because they obtained the court-ordered Consent Decree, which materially changed their legal relationship with Defendants.  The degree of relief the Plaintiffs received is sufficient to meet the low threshold at this phase of the analysis; accordingly, Plaintiffs are prevailing parties entitled to invoke the statutory fee-shifting provisions.

### B.    Special Circumstances do not Prevent an Award of Fees

Next, Defendants contend that even if Plaintiffs are deemed to have prevailed, they should be denied an award of fees and costs due to "special circumstances."  (Def.'s Resp. at 10). According to Defendants, "special circumstances are present whenever equitable considerations dictate that an award should not be made."  (Def.'s Resp. at 10).  Plaintiffs counter that this standard comes from cases construing the Equal Access to Justice Act (the"EAJA"), which specifically applies in cases brought against the United States, and does not apply to the present matter.  (Pl.'s Reply at 11 n. 3).  As a threshold matter, I agree with Plaintiffs and apply the "special circumstances" standard set forth under the case law interpreting fee awards under various civil rights statutes.[4]

---

[4] In practice, which standard applies is of little import.  Under the EAJA "special circumstances" exception, 28 U.S.C. § 2412(d), the districts courts must award fees unless the government's position is "substantially justified" or "special circumstances apply."  In making the latter inquiry, the courts are expressly instructed to consider traditional equity principles.  *See Taylor v. United States*, 815 F.2d 249, 252 (3d Cir. 1987); *see also* H.R.Rep. No. 96–1418, at 11, 1980 U.S.C.C.A.N. 4984, 4990 (1980) (setting forth legislative history of EAJA).  While the "special circumstances" inquiry under civil rights statutes does not explicitly direct the consideration of such principles, in practice, courts consider them to the extent they pertain to whether an award of fees is "unjust."  *See, e.g.*, *Com. v. Local 542, Int'l Union of Operating Engineers*, No. 71-2698, 1999 WL 54922, at *2 (E.D. Pa. Jan. 19, 1999) (stating that conduct by plaintiffs which unnecessarily caused or lengthened the litigation can constitute "special

A prevailing party seeking fees in a civil rights case "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enter., Inc*., 390 U.S. 400, 402 (1968) (interpreting fee-shifting language in § 204(b) of the Civil Rights Act of 1964, 42 U.S.C. § 2000a–3(b)); *E.E.O.C. v. L.B. Foster Co.*, 123 F.3d 746, 750 (3d Cir. 1997); *see also Hensley*, 461 U.S. at 429 (noting that legislative history adopts *Piggie Park* standard for fee petitions brought pursuant to Section 1988); *New York Gaslight Club. Inc. v. Carey*, 447 U.S. 54, 63 (1980) (applying *Piggie Park* standard to Title VII of the Civil Rights Act); *Disabled in Action of Pa.  v. Pierce*, 789 F.2d 1016, 1021 (3d Cir. 1986) (applying standard to Rehabilitation Act); *Hagarty v. Sunoco, Inc*., No. 02-102, 2005 WL 408038, at *1 (E.D. Pa. Feb. 4, 2005) (applying standard to ADA).  Though this exception operates to "tightly cabin[]" the district courts' discretion to award fees in civil rights cases, *see New Jersey Coal. of Rooming & Boarding House Owners v. Mayor & Council of City of Asbury Park*, 152 F.3d 217, 225 (3d Cir. 1998), the Court has set this stringent standard to ensure that parties acting as "private attorney[s] general" to vindicate socially important rights are not "routinely forced to bear their own attorney's fees."[5]  *Piggie Park*, 390 U.S. at 401.

---

circumstances" for party seeking fees under Title VII); *see also Seattle Sch. Dist. No. 1 v. State of Wash*., 633 F.2d 1338, 1348 (9th Cir. 1980), *aff'd sub nom. Washington v. Seattle Sch. Dist. No. 1*, 458 U.S. 457 (1982) (providing that one of the factors in determining if a case involves "special circumstances" which would make an award unjust is "the balance of the equities.").

[5]  I note that in contrast, the EAJA "special circumstances" exception is intended to be a "safety valve" for the benefit of the government.  *See* H.R.Rep. No. 96–1418, at 11, 1980 U.S.C.C.A.N. 4984, 4990 (1980).  Given that courts "must look beyond facial similarity to the policies underlying [] fee statutes before [] determin[ing] the standard for awarding fees," *Dorn's Transp., Inc. v. Teamsters Pension Trust Fund of Philadelphia & Vicinity*, 799 F.2d 45, 48 (3d Cir. 1986), the different policy objectives underlying these exceptions supports the Court's refusal to impose the EAJA standard in this case.

There is no categorical rule for when an award of fees would be unjust.  The Supreme

Court has supplied that deeming an award "unjust" is a "short-hand way of saying that, even

before calculating a lodestar or wading through all the reasonableness factors, it is clear that the

reasonable fee is no fee at all."  *Farrar*, 506 U.S. at 118 (O'Connor, J. concurring) (awarding no

fees, even though plaintiff prevailed by obtaining nominal damages in the amount of one dollar).

However, in every Supreme Court case besides *Farrar*, the Supreme Court has rejected the claim

that special circumstances exist.  *See Washington*, 458 U.S. at 487 n.31 (refusing to disturb Ninth

Circuit finding it is not "special circumstances" where prevailing party is public entity); *N.Y.

Gaslight Club*, 447 U.S. at 70 n. 9 (1980) (plaintiffs were represented pro bono by public interest

group); *Bradley v. Sch. Bd. of Richmond*, 416 U.S. 696, 710-22 (1974); *Piggie Park*, 390 U.S. at

402 (good faith was shown by defendants).  It is apparent, therefore, that the exception is to be

applied only in unusual circumstances and upon a strong showing by the defendant.[6]  *See Arc of*

---

[6]  The Third Circuit endorsed in dicta the idea that a "nuisance settlement" could
constitute a special circumstance rendering a fee award unjust.  *Ashley*, 794 F.2d at 134 n. 9.
The Court noted that the term  "nuisance settlement" is a "nebulous concept the parameters of
which have not yet been defined in the extant case law."  *Id.* at 141 n. 5.  However, it suggested
that where a plaintiff's claim "appears to be legally or factually non-meritorious," the defendant
enters into a court-enforced agreement solely to avoid litigation expense, and the settlement is
the only benefit conferred on the plaintiff, the court may appropriately deny an award as unjust,
so long as it has previously determined that plaintiff have prevailed.  *See id.* at 132-35 (analyzing
case law and explaining why the courts must conduct a "threshold determination of prevailing
party status" before assessing whether a nuisance settlement constitutes a special circumstance);
*accord Tyler v. Corner Constr. Corp., Inc.*, 167 F.3d 1202, 1206 (8th Cir. 1999) (also concluding
that a nuisance settlement represents a special circumstance rendering a fee award unjust).  The
Court cautioned that in conducting this inquiry, the district courts should focus on lack of merit
of the plaintiff's case, not on the defendant's motivation in settling, and the lower court must still
explain why a fee award would result in injustice.  *Ashley*, 794 F.2d at 134 n. 9 (ultimately
concluding despite apparent nuisance settlement that fees should be awarded).  Defendants have
not attempted to rely on *Ashley*, so I do not consider whether the parties' agreement is a nuisance
settlement constituting a special circumstance.

*New Jersey, Inc. v. Twp. of Voorhees*, 986 F. Supp. 261, 267 (D.N.J. 1997) (*citing Ashley v.*

*Atlantic Richfield Co.*, 794 F.2d 128, 134 n. 9 (3d. Cir. 1986)).

Defendants contend under the EAJA standard that traditional equity considerations

require a fee denial because Plaintiffs failed to name the Commonwealth of Pennsylvania or the

individual medallion holders as defendants in this suit and because they refused to participate in

the legislative process to pass Act 119.  (Def.'s Resp. at 11-12).  Having carefully considered

these arguments, the Court concludes that Defendants have not made the strong showing

necessary to invoke the narrow special circumstances exception.

The issue of whether Plaintiffs needed to join the Commonwealth or the medallion

holders was resolved by the Court in the course of this litigation.  (*See* Order, ECF No. 26)

(denying Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(7) for failure to join

the taxicab service providers); (*see also* Order, ECF No. 41) (denying petition by 260 individual

medallion holders to intervene due to lack of standing).  Defendants' contention that Plaintiffs

"refused to participate in obtaining a legislative solution to the problem at the center of this

litigation," is also disputed, as Plaintiffs submitted that they did participate in the legislative

lobbying necessary to pass Act 119's implementing regulations after obtaining the Consent

Decree as a condition precedent.  (Hr'g Tr. 12:24-13:5, Oct. 29, 2014) [hereinafter "Hr'g Tr."].

According to Plaintiffs, they opted not to assist prior to obtaining the Consent Decree because

they found Act 119 insufficient, but were willing to help following the additional concessions

the PPA offered to obtain the Decree.  (Hr'g Tr. 13:2-24, 20:8-21, 22:4-18).  In any event,

Defendants have not shown that Plaintiffs' conduct in assisting or failing to assist in the lobbying

effort to pass Act 119 is the sort of egregious conduct necessary to render an award of fees

15

unjust.  Accordingly, Defendants' arguments to deny fees to Plaintiffs based on special circumstances fail.  As Plaintiffs have prevailed and there are no special circumstances upon which to deny their fee request outright, the Court turns to calculation of the lodestar.

### C.   Reduction of Lodestar Warranted

The starting point for determining the amount of a reasonable fee is the lodestar, which courts determine by calculating the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *McKenna v. City of Philadelphia*, 582 F.3d 447, 455 (3d Cir. 2009) (*quoting Hensley*, 461 U.S. at 433); *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 (3d Cir. 2005).  The fee petitioner must prove that its request for fees is reasonable by adducing some evidence "supporting the hours worked and rates claimed." *Rode*, 892 F.2d at 1183 (*quoting Hensley*, 461 U.S. at 433).  The resulting lodestar is presumed to represent a reasonable fee.  *Id.* (*citing Blum v. Stenson*, 465 U.S. 886, 895 (1984)).  However, the opposing party may challenge the reasonableness of the requested fee by submitting affidavits or briefs of sufficient specificity to give the petitioning party notice.  *Rode*, 892 F.2d at 1183; *Bell v. United Princeton Props.*, Inc., 884 F.2d 713, 720 (3d Cir. 1989).  Once the adverse party raises objections, the court has discretion to adjust the fee award downward in light of the specific objections raised.  *See Rode,* 892 F.2d at 1183 (*citing Bell*, 884 F.2d at 721); *see also Cunningham v. City of McKeesport*, 753 F.2d 262, 267 (3d Cir.1985), *vacated on other grounds*, 478 U.S. 1015, *reinstated*, 807 F.2d 49 (3d Cir. 1986)*, cert. denied*, 481 U.S. 1049 (1987).  It may not, however, make reductions *sua sponte*.  *Bell*, 884 F.2d at 721.

Here, Plaintiffs seek approval of the following hours and billing rates:[7]

| Attorney | Hours | Hourly Rate | **Lodestar** | Costs | **Total Request** |
|---|---|---|---|---|---|
| Stephen F. Gold | 233.36 | $585 | $136,625.85 | $350 | $136,975.85 |

Plaintiffs have submitted contemporaneous time records to support counsel's claimed hours and an affidavit attesting to the reasonableness of his hourly rates.  In response, Defendants contend that Attorney Gold should not be compensated for excessive hours charged preparing the complaint or the fee petition, reviewing spreadsheets, and for unnecessary travel and telephone calls, and that Mr. Gold's hourly rate is excessive in light the rates Defendants pay their own attorneys.

For the reasons that follow, and in light of the Defendants' specific objections, Attorney Gold's compensable time will be reduced from 233.36 hours to 207.9 hours.  However, the Court finds no reason to disturb Attorney Gold's requested rate of $585 per hour.  The Court therefore finds the lodestar to be $121,621.50.

### 1.    Time Charged

In calculating hours, a court should "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Maldonado*, 256 F.3d 181, 184 (3d Cir. 2001) (*quoting Public Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (internal citation omitted)).  "Hours that would not generally be billed to

---

[7] This includes the additional hours related to the instant fee petition.  This is compensable time.  *See Planned Parenthood v. Attorney Gen. of the State of N.J.*, 297 F.3d 253, 268 (3d Cir. 2002) (a party entitled to an award of attorney's fees is also entitled to reimbursement for time spent litigating its fee application.).

one's own client are not properly billed to an adversary." *Public Interest Group*, 51 F.3d at

1188.  The Third Circuit has reiterated that "the District Court has a positive and affirmative

function in the fee fixing process, not merely a passive role." *McKenna*, 582 F.3d at 455

(*quoting Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001)).  Thus, the

determination inevitably requires "a fair amount of judgment calling based on [the Court's]

experience with the case and its general experience as to how much time a case requires." *Bell*,

884 F.2d at 721.

### a.      Drafting of Complaint

Defendants first object to Attorney Gold recording approximately 14 hours for the

preparing of the Complaint in this matter, which they charge is "remarkably similar" to the

complaint filed in the *Noel* case.[8]  (Def.'s Resp. at 17).  Mr. Gold billed 4.28 hours "start[ing] on

the complaint," 1.76 hours "cont[inuing]" writing the complaint, 4.13 hours rewriting the

complaint and working on "list of what PPA controls," 1.69 hours editing the complaint, and

1.69 hours on a final review and edit of complaint, for a total of 13.55 hours.  (*See* Stephen Gold

Slip Listing 2-3, ECF No 91-4).  Mr. Gold defended the time spent on the Complaint, noting that

much of what he billed for was the research and drafting required to make allegations specific to

Philadelphia's taxicab system.   (Hr'g Tr. 10:24-11:8).  He further noted that it is not atypical to

spend far longer than fourteen hours on complaints alleging disability discrimination.  (*Id.* 10:25-

11:1).

Defendants did not clarify in their Response or at oral argument which portions of the

---

[8]  One attorney of record in *Noel*, Julia Pinover, was admitted pro hac vice to assist Mr. Gold in certain aspects of the instant litigation.  She has not requested fees in this matter.

Complaint were redundant to the *Noel* complaint, nor do they supply the court with the amount of time they believe would have been sufficient for Attorney Gold to prepare, review, and finalize the Complaint.  The Court has conducted an independent comparison, and agrees that Attorney Gold spent an excessive amount of time on this task given that the legal analysis in the Complaint is identical to the legal analysis in *Noel*.  While the court recognizes that the majority of time spent preparing the Complaint was devoted to addressing the factual background pertinent to this matter only, the Court agrees with Defendant that some reduction is in order.  Therefore, the Court will reduce Plaintiffs' requested hours by 50%, or 6.77 hours.  Accordingly, it is appropriate to award Attorney Gold 6.78 hours for drafting the Complaint.

In so concluding, the Court notes that Attorney Gold's level of skill and experience not only informs the Court's judgment as the appropriate hourly fee, but also helps to establish how much time counsel should reasonably have spent in performing a particular task.  "To put it another way, normally the higher the allowed hourly rate commanded based upon skill and experience, the shorter the time it should require an attorney to perform a particular task." *Rainey v. Philadelphia Hous. Auth*., 832 F. Supp. 127, 130 (E.D. Pa. 1993), *rev'd on reconsideration in part on other grounds*, No. 92-6815, 1994 WL 13828 (E.D. Pa. Jan. 19, 1994) (reducing from 5.35 hours to 2.0 hours an attorney with nine years of experience spent drafting a complaint).

### b.        Drafting of Fee Petition and Reply

Defendants next argue that Attorney Gold spent an excessive amount of time drafting the present fee petition, but provide no argument as to why these hours are allegedly excessive. (Def.'s Resp. at 17).  As a general matter, such fees are recoverable.  *Student Public Interest*

*Research Group of New Jersey v. AT&T Bell Lab.*, 842 F.2d 1436, 1455 (3d Cir. 1988) [hereinafter, "SPIRG"]. However, "time spent on the fee petition is to be analyzed separately from the time spent on the main part of the litigation." *Cerva v. E.B.R. Enter., In*c., 740 F. Supp. 1099, 1108 (E.D. Pa. 1990). The hours claimed for preparing a fee petition should be reduced if the petition is only partly successful. *SPIRG*, 842 F.2d at 1455 ("[W]here fee applicants do not fully succeed in recovering their fees, the fee award must be reduced to reflect incomplete success on the fee award.").

According to his billing slips, Attorney Gold spent 3.42 hours writing the fee motion and accompanying memorandum of law, 2.49 hours writing his affidavit and updating his resume, and 7.36 hours researching and writing the Reply on the fee issue. (Stephen Gold Slip Listing at 14-15). The Court notes that counsel's fee petition contains extensive analysis, original to the issues in this suit, as to why the Consent Decree operates to make Plaintiffs a prevailing party, (ECF No. 91-1 ¶¶ 6-12), and explanation of why the hours billed are reasonable, (*Id.* ¶ 14). The Court finds the 3.42 hours billed in drafting the motion and accompanying memorandum are not excessive, but as more fully explained herein, Plaintiffs fee petition is not entirely successful. Accordingly, I will reduce the lodestar award for the preparation of the fee petition by 25% or .85 hours to reflect their incomplete success. As to the Reply, it is iterative of Counsel's initial memorandum in parts, but also contains original analysis to rebut several of Defendants' arguments raised in their Response. (*See* ECF No. 93 at 2-5, 10-14). Therefore, the Court finds a further reduction of 25%, or 1.84 hours, is warranted.

The Court will also reduce the time spent by Attorney Gold updating his resume and drafting the declaration. His resume appears to contain no recent information, such as updates to

employment, or recent publications or representations, with the exception of one case from 2013. (Resume of Stephen Gold 10, ECF No. 91-5). Similarly, his declaration reflects receipt of his requested fee in a 2014 case and other information specific to his billing on this case, but otherwise contains no information that appears to have been updated exclusively for this case. Given these limited updates, the Court finds it appropriate to reduce by 75%, or 1.9 hours, the 2.49 hours requested.

### c.      Expert Interview in Miami

Attorney Gold billed 8.59 hours for travel to Miami to interview an expert. (Stephen Gold Slip Listing at 4-5). Defendants state that the need for this trip was questionable, as the expert ultimately did not produce a report or otherwise become involved in this litigation. (Defs.' Resp. at 17). Attorney Gold claims that at the time he traveled to Miami, he believed he would require a transportation expert to opine at trial as to the feasibility of converting pre-existing taxicabs into WAV. (Hr'g Tr. 26:22-25). He noted that there are few experts with this body of knowledge, and he was obligated to travel to Miami to interview an expert who appeared viable. (*Id.* at 27:1-7). Attorney Gold was ultimately unimpressed and opted not use that expert, and therefore charged only for his travel time and not for the actual meeting. (*Id.*).

The Court finds it appropriate to reduce this request in its entirety and award no hours for Attorney Gold's travel to Miami. In an age of easy electronic communication, Mr. Gold had ready alternatives besides flying to Florida to conduct a preliminary interview of the nature he seeks recompense for here. It is not appropriate to bill his adversary for this expenditure. Accordingly, the Court will reduce his requested hours by 8.59.

**d.** **Phone Conversations with Department of Justice Officials**

Defendants further request a reduction for Attorney Gold's various conversations with officials at the Department of Justice, who did not participate or seek to intervene in the suit. (Def.'s Resp. at 13).  Attorney Gold stated that a "number" of those conversations were initiated by the DOJ officials, and he was not needlessly reaching out to attempt to persuade the DOJ to intervene in the case or to otherwise get involved.  (Hr'g Tr. 10:7-22).  However¸ he billed for seven distinct calls in the following amounts of time: 1.14 hours (Slip 1895), .74 hours (Slip 1959), 5.40 hours (Slip 2017), .69 hours (Slip 2024), .42 hours (Slip 2096), .72 hours (Slip 2102), and .69 hours (Slip 2156).  Slips 1895, 1959, 2102, and 2156 are block entries that also contain time billed to phone calls to others besides DOJ officials, Slip 2017 also contains time billed for writing Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss, and Slip 2026 contains time for several different phone calls with the DOJ.  Indeed, the only billing slip that relates soley to a call with the DOJ is Slip 2096.

Accordingly, Attorney Gold's block billing on Slips 1895, 1959, 2102, 2017, 2026, and 2156 lacks sufficient specificity for the Court to determine the amount of time actually spent on calls with DOJ officials versus engaged in other tasks that Defendants have not challenged, such as calling co-counsel or drafting substantive legal documents.  Thus, the Court will reduce the 9.38 hours charged in these slips by 25%, or 2.34 hours.  However, Attorney Gold may recover .42 hours for Slip 2096.  This litigation involved important issues of federal law and it is understandable that the DOJ would want to stay apprised of the status of this case.  Recovery for .42 hours is not excessive, in light of this consideration.

### e.      Hours Reviewing Spreadsheets

Lastly, Defendants object to the 3.27 Attorney Gold spent reviewing spreadsheets produced by the PPA containing information related to the individual medallion owners.  (Defs.' Resp. at 13); Hr'g Tr. 49:10-11.  Defendants suggest this time should not be compensated, because Plaintiffs never actually sought to join the individual medallion holders despite requesting and reviewing the spreadsheet.  (Defs.' Resp. at 13).  I agree.  Hours are reasonably expended when they are productive.  *See Hensley*, 461 U.S. at 434.  Here, Defendants produced the spreadsheet of individual medallion holders in response to Plaintiffs discovery request; however, by this time, Plaintiffs had already argued against Defendants' attempts to bring the medallion holders into the lawsuit.  (Hr'g Tr. at 58:8-24).  Accordingly, since Plaintiffs' had already determined they were opposed to the joinder of the individual medallion holders, Attorney Gold should not be compensated for the time he spent reviewing this spreadsheet.  The Court will further reduce the fee request by 3.27 hours.

### 2.      Reasonable Rate

The reasonable rate is a factual question determined by the evidence in the record and calculated according to according to "the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Rode*, 892 F.2d at 1183 (*citing SPIRG*, 842 F.2d at 1442 n. 3).  Initially, the fee petitioner has the burden of producing sufficient evidence of "what constitutes the reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case."  *Smith v. Philadelphia Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997).  The plaintiff must submit more than his attorney's affidavit to meet this burden.  *Id.* (*citing Blum v. Stenson*, 465 U.S. 886, 895

n. 11 (1984)).  The best evidence of the reasonable rate for an attorney's time is the customary

billing rate for clients, which creates a presumption of reasonableness.  *Loughner*, 260 F.3d at

180; *Maldonado*, 256 F.3d at 184-85.

      Once the plaintiff has made the prima facie showing of the reasonable community rate,

the defendant may rebut the prima facie case "only with appropriate record evidence."

*Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996).

"In the absence of such evidence, the plaintiff must be awarded attorneys' fees at [his] requested

rate."  *Evans v. Port Auth. of New York & New Jersey*, 273 F.3d 346, 361 (3d Cir. 2001) (*quoting*

*Smith*, 107 F.3d at 225).

      Plaintiffs have met their prima facie case that Attorney Gold's requested rate of $585 per

hour is a reasonable market rate.  Attorney Gold has submitted a declaration reflecting that he is

an attorney with forty-three years of experience, who, over the course of his career, has litigated

many civil rights suits on behalf of persons with disabilities in Pennsylvania, New York, and

elsewhere.  (*See* Aff. ¶¶ 2-13, ECF No. 91-3); (CV of Stephen Gold, ECF No. 91-5).  He is

presently employed in private practice, specializing in disabilities rights litigation. (Resume of

Stephen Gold at 1); *see also* Hr'g Tr. 7:25-8:24.  Plaintiffs have submitted evidence that

Attorney Gold's $585 per hour falls within the norm of Philadelphia attorneys with similar

positions, as partners at Philadelphia firms charge fees ranging from $460 to $615 per hour,

though some charge as much as $880 per hour.  (*See Id.* ¶ 17); (Pl.'s Br. at 13) (listing average

partner billing rates from publishes survey that lists hourly rates charged by a number of

Philadelphia law firms).  In their Reply Brief, Plaintiffs have noted that public interest attorneys

at Community Legal Services ("CLS") in Philadelphia with more than twenty-five years'

experience charge fees ranging from $600 to $650 per hour, so Counsel's requested fee is less than what other attorneys with comparable experience in his field deem reasonable.  (Pl.'s Reply at 14).  The CLS schedule has been approvingly cited by the Third Circuit as being well developed and has been found to be a "fair reflection of the prevailing market rates in Philadelphia."  *Maldonado*, 256 F.3d at 187.

Defendants have produced no record evidence showing that counsel's requested rate is unreasonable based on the currently prevailing rates in the community for comparable legal services.  While they attach the fee agreement they entered into with their attorneys, which provides for a rate of $200 per hour, (*see* ECF No. 92-4), this does not disprove that a rate of $585 per hour is reasonable for someone of Attorney Gold's experience, length of practice, and specialization.  Defendants' counsel is not engaged in similar work representing *plaintiffs* in civil rights litigation, nor is it apparent that defense counsel has as many years of experience as Attorney Gold.  Defendants' fee arrangement with their counsel does not effectively challenge the content of Attorney Gold's affidavit and the fee schedules Plaintiffs have submitted to establish his fee is reasonable.

Instead, Defendants argue that the Court should reduce Attorney Gold's requested fees by fifteen percent because the PPA is a public entity and "any attorneys' fees awarded to Plaintiffs counsel will be paid out of an already strained public purse."[9]  (Def.'s Resp. at 14).

---

[9]  It is not entirely apparent from Defendants' brief whether they are arguing merely that Attorney Gold's fees should be reduced on this basis, or for an overall reduction in the lodestar. (*See* Def.'s Resp. at 14) (arguing to reduce the fees charged by 15%, but relying on case law reducing such as *Barrett v. West Chester University*, No. 03–4978, 2006 WL 859714, at *18 (E.D. Pa. March 31, 2006), which reduced the lodestar by 15% based on defendant's status as public university and its precarious financial condition).  Given that this argument appears under the subheading specifically referring to Attorney Gold's fees, the Court is reluctant to construe it

However, Defendants have not established that their status as a fiscally-constrained public entity is an appropriate basis upon which to reduce Attorney Gold's requested fees.  Defendants rely on *James v. SEPTA*, a case in which the court reduced Attorney Gold's fees because he charged at the top of the market rate, not due to SEPTA's status as a public entity.  *See* No. 93-5538, 1997 WL 698035, at *3 (E.D. Pa. Nov. 4, 1997).  As noted above, Defendant Gold is not seeking compensation at the top of the fee scale in the present matter, so *James* is not on point.  Defendants also cite to *Hall v. Galie*, in which the Court noted that recovery for excessive or redundant fees is particularly inappropriate when payment of the fees implicates the public coffers, but ultimately accepted counsel's requested rates as in line with the rates charged for work by comparable lawyers at comparable firms.  No. 05-975, 2009 WL 722278, at *8-*9 n. 13 (E.D. Pa. Mar. 17, 2009).  Accordingly, this Court is not persuaded that Defendant's status as a public entity is an appropriate basis upon which to reduce counsel's hourly rates.  *See Bass v. Dellagicoma*, No. 10-1195, 2013 WL 3336760, at *3 n. 3 (D.N.J. June 28, 2013).

---

as an argument for an overall reduction in the lodestar.  To the extent Defendants intended to raise such a claim, however, the Court notes that despite *Barrett* and various out-of-circuit cases Defendants have cited that reduced the lodestar due to defendant's status as a public entity, the recent trend in this Circuit is to the opposite.  Notably, in cases brought under the Individuals with Disabilities Education Act ("IDEA"), the district courts have rejected the contention that the defendant school district's distressed financial condition is a basis upon which to reduce the lodestar.  *See, e.g.*, *Charles O. v. Sch. Dist. of Philadelphia*, No 13-0512, 2014 WL 4794993, at *9 (E.D. Pa. Sept. 26, 2014) (declining to reduce lodestar in IDEA case based on defendant school district's distressed financial condition because the defendants in IDEA cases are necessarily public entities with similar budgetary conditions and the IDEA contains no language to suggest those conditions should be considered in calculating an award of attorney's fees).  The district courts have also declined to consider public entity status in other contexts.  *See e.g.*, *Shankle v. Bell*, No. 04-1885, 2007 WL 1864570, at *3 (W.D. Pa. June 27, 2007) (refusing to reduce lodestar by 10% in retaliation suit against the City of Philadelphia).  Accordingly, though the Court is sympathetic to the PPA's circumstances, the Court would be disinclined to reduce the lodestar due to PPA's status as a public entity.

26

In view of all of the foregoing, the Court accepts Attorney Gold's rate of $585 per hour. *See Smith*, 107 F.3d at 225 (district court may not set attorney's fees based on its general sense of what is usual and proper, but "must rely upon the record.").

## IV.    CONCLUSION

As set forth above, the Court calculates the attorney's fees award as follows:

| Attorney | Hours Claimed | Adjustments | Rate | Amount |
|---|---|---|---|---|
| Attorney Gold | 233.36 | – 6.67 Complaint | $585 | $121, 621.50 |
| | | – 2.75 Fee Petition, Declaration and CV | | |
| | | – 1.84 Reply Brief | | |
| | | – 8.59 Travel | | |
| | | – 2.34 DOJ Calls | | |
| | | – 3.27 Discovery | | |
| **TOTAL FEES:** | | | | $121, 621.50 |

Defendants have not contested costs, and the court finds it appropriate to award them in their entirety.  The Court grants in part Plaintiffs' Motion for Attorney's Fees and Costs, and awards $121,621.50 in fees and $350.00 in costs to Plaintiffs.

An appropriate order follows.

BY THE COURT:

  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI

UNITED STATES MAGISTRATE JUDGE